## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOHN CASAGRANDE,

        Plaintiff,

v.

NORM BLOOM & SON, LLC

        Defendant.

3:11 - CV - 1918 (CSH)

**November 10, 2014**

## RULING ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS

**HAIGHT, Senior District Judge:**

Plaintiff John Casagrande brings this action pursuant to the Jones Act, 46 U.S.C. § 688, against Defendant Norm Bloom & Son, LLC ("Bloom") to recover damages he sustained while employed by Bloom as a seaman on board the shell fishing vessel the "Grace P. Lowndes" (the "vessel"). The matter is currently before the Court for consideration of Plaintiff's motions to compel Defendant to produce documents and motion to sanction Defendant for failing to comply with its disclosure obligations. Doc. [40]. Defendant opposes the motions. This Ruling decides them.

## I.  BACKGROUND

On the morning of January 9, 2010, prior to the vessel's scheduled expedition to Defendant's oyster grounds, Plaintiff was tasked with maintenancing the ship's dredging equipment. That assignment was a two-man operation, which required Richard Barber, who was positioned in the vessel's wheelhouse, to manipulate hydraulic winch controls that raised and lowered the dredging equipment, as Plaintiff, standing in the cargo dredge basket, applied grease to certain parts of the

apparatus.  Plaintiff's hand was crushed in this equipment when the vessel's cargo boom shifted unexpectedly.  James Bloom, who witnessed the accident and who was also scheduled to work aboard the vessel that day, immediately rushed Plaintiff to Norwalk Hospital.  Plaintiff would undergo three surgeries on his hand in the following weeks, including one to reattach his middle finger.  This lawsuit followed.[1]

## II.  DISCUSSION

After discovery in this case closed on March 7, 2014, Plaintiff filed the instant motion on July 30, 2014, requesting the Court to compel Defendant to produce discovery items Plaintiff sought in written requests for production dated January 30, 2012, and August 12, 2013, and in demands for document production set forth in schedules attached to the September 3, 2013 deposition notices for James Bloom and Norman Bloom (a managing member and namesake of Defendant). *See* Doc. [40-1] at 4 (referencing first request for production);  Doc. [40-3], Ex. 3, at 3 (second request for production); Doc. [40-4], Ex. 7 (deposition notices and demands for production).  Plaintiff moves the Court to sanction Defendant by awarding him certain costs and attorneys' fees and by precluding Defendant from "offer[ing] any evidence to show that Plaintiff's actions on January 9, 2010, contributed to or caused his injuries."  Doc. [40] at 2.

Defendant objects to the instant motion, arguing that it "is untimely and should be denied" because "Plaintiff's first request to confer under Rule 37 was not until March 17, 2014" — ten days

---

[1]Plaintiff charges Defendant with the following four causes of action: "negligence" in that Defendant "breached its duty to provide a reasonably safe vessel" Doc. 1 (Count I), ¶11; "unseaworthiness" of the vessel, in that it "it did not have a competent and skilled captain and equipment"; *id.*, (Count II), ¶ 20; "maintenance and cure," for expenses Plaintiff incurred due to his injuries, *id.*, (Count III), ¶¶ 24-25; and "punitive damages" in that Defendant's actions constituted "gross negligence" because Defendant allegedly "knew that the captain of the 'Grace P. Lowndes' was not skilled and the vessel was not seaworthy," *id.* (Count IV), ¶¶ 27-28.

after the date on which discovery closed.  Doc. [41] at 5.  Defendant also suggests that Plaintiff's motion to compel presents a more fundamental problem: it seeks documents that either do not exist, are in the possession of a third party, or have already been produced by Defendant.[2]  *See* Doc. [41], at 5 ("Plaintiff continues to demand production of various documents that do not exist"); *Id.* at 6 ("[Defendant] has produced all non-privileged responsive documents within its possession. [Defendant] cannot produce documents that do no exists and/or are in the possession of a non-party to this litigation.").

Initially, I will evaluate Defendant's claim that the instant motion to compel discovery should be denied as untimely.  If the motion survives beyond that point, I will consider its merits.

## A.   Timeliness of the Instant Motion

Pursuant to Rule 37(a)(3), Fed. R. Civ. P., "[a] party seeking discovery may move for an order compelling . . . production" if, *inter alia*, "a party fails to answer that inspection [of requested documents] will be permitted — or fails to permit inspection — as requested under Rule 34."[3]  Rule 37 does not establish a deadline for the filing of a motion to compel; rather, that deadline is prescribed by Rule 16, which requires the district court to establish a scheduling order limiting the

---

[2]Defendant represents that Plaintiff has been provided with the following documents: "Medical Records of Plaintiff"; "Accounting of Medical ("Cure") payments made to Plaintiff's medical providers"; "Various written correspondence between . . . Acadia and Plaintiff/Plaintiff's Counsel"; "Transcribed recorded statement of Plaintiff"; "Ten (10) color photographs of the . . . vessel and rigging taken by [Defendant's expert,] David C. Dubois"; "U.S. Coast Guard Commercial Fishing Vessel Safety Evaluation for the . . . vessel"; "Vessel Documentation Information and Certificate of Documentation with the U.S. Coast Guard for the . . . vessel"; "Vessel Particulars"; "Summary of U.S. Coast Guard Contacts for the . . . vessel"; and "State of Connecticut Vessel Registration." Doc. [41] at 4-5.

[3]Rule 34 enables any party to serve upon any other party to an action a request for documents, electronically stored information, and other "designated tangible things." Fed. R. Civ. P. 34.

time to file motions and complete discovery.  *See* Fed. R. Civ. P. 16(b).  "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  Consequently, where as here, a party has filed a motion to compel after discovery has closed, that party must establish good cause for the late filing.  *See*, *e.g.*, *Gucci Am.*, *Inc.* v. *Guess?*, *Inc.*, 790 F. Supp. 2d 136, 140 (S.D.N.Y. 2011); *Eng–Hatcher v. Sprint Nextel Corp.*, No. 07 cv 7350 (BSJ) (KNF), 2008 WL 4104015, at *3 (S.D.N.Y. Aug. 28, 2008).

"[T]he primary consideration" in determining whether good cause has been shown "is whether the moving party can demonstrate diligence." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (same); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (same).  In addition to diligence, other factors to consider when assessing whether to enlarge a discovery deadline include: "(1) the imminence of trial; (2) whether the request is opposed; (3) prejudice to the non-moving party; (4) whether the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court; and (5) whether further discovery is likely to lead to relevant evidence." *Jeannite v. City of New York Dep't of Bldgs.*, No. 09 cv 3464 (DAB) (KNF), 2010 WL 2542050, at *2 (S.D.N.Y. June 21, 2010).

Where a party is aware of the existence of documents or other information before the close of discovery and propounds requests after the deadline has passed, those requests have been denied. *Gucci*, 790 F. Supp. 2d at 140; *Schweitzer v. Mulvehill*, No. 95 cv 10743, 1991 WL 14016, at *2 (S.D.N.Y. Jan. 13, 1999) (precluding deposition of non-party because discovery deadline had passed); *Slomiak v. Bear Sterns & Co.*, No. 83 cv 1542 (CSH), 1985 WL 410, at * 1 (S.D.N.Y. Mar. 12, 1985) (vacating notices of deposition with accompanying demands for document production

4

served after discovery deadline); *see also Pretty v. Prudential Ins. Co. of Am.*, 696 F. Supp. 2d. 170, 178 (D. Conn. 2010); *In re Health Mgmt., Inc.*, No. 96 cv 0889 (ADS), 1999 WL 33594132, at *5 (E.D.N.Y. Sept. 25, 1999). Ultimately, however, "the federal rules give district courts broad discretion to manage the manner in which discovery proceeds." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003); *In re Agent Orange Prod. Liability Litig.*, 517 F.3d 76, 103 (2d Cir. 2008) ("A district court has wide latitude to determine the scope of discovery").

In the case at bar, the record reflects the following with respect to document production. As noted earlier, Plaintiff initially requested some or all of the documents demanded in the instant motion through his first written request for production, dated January 30, 2012. Doc. [40-1] at 4. In its response to that request on May 1, 2012, Defendant produced medical documents for the Plaintiff and letters pertinent to his claim of maintenance and cure. Doc. [23] at 1. Defendant, however, objected to the production of all other documents, including those requests that related to certain accident report and business records regarding the vessel and its crew and captain. *Id.* Despite Defendant's objections, Plaintiff did not file at that point a motion to compel the production of documents. Discovery closed, for the first time, on February 25, 2013. Doc. [11].

Thereafter, Plaintiff filed a motion to extend the discovery schedule on grounds that he had identified the need for additional discovery at a settlement conference before Magistrate Judge Garfinkel on July 11, 2013, doc. [22]. *See* Doc. [26]. In considering that motion, the Court credited Plaintiff's representation that at the settlement conference he learned of facts relating to "'the presence of additional captains or crew on the vessel . . . on January 9, 2010.'" *Id.* at 6. The Court found that these facts had a "direct bearing on Plaintiff's ability to prove his case" and granted Plaintiff's motion to extend the discovery schedule in that Ruling, dated August 5, 2013. *Id.* After

5

several other requests to extend the discovery deadline were granted by the Court, the final discovery deadline was set for March 7, 2014. Doc. [32].

On or around August 12, 2013, Plaintiff served a second request for document production, and shortly thereafter, on or around September 3, 2013, demanded document production in schedules attached to the deposition notices for James Bloom and Norman Bloom. In response to one or both of these latter demands for production, Defendant provided Plaintiff with responsive documents on November 25, 2013. Doc. [40-3], Ex. 5. The following day, a joint inspection of the vessel was conducted by Plaintiff's expert Alan Blume, and Defendant's expert David Dubois. In an email to Defendant's counsel on December 2, 2013, Plaintiff's counsel communicated that the November 25, 2013 document production was not in compliance with Plaintiff's discovery requests. *Id.* Plaintiff's counsel itemized five categories of documents that he had not received, and demanded the immediate production of that discovery material. *Id.*

On January 14, 2014, Defendant provided Plaintiff with its response to Plaintiff's second request for document production, wherein Defendant memorialized its objections to Plaintiff's production requests. Doc. [40-3], Ex. 3. The depositions of James Bloom and Norman Bloom, which were held on January 16, 2014, passed without Plaintiff receiving the documents he had demanded in their September 3, 2013 deposition notices. Doc. [40-1] at 8. At this point, having been apprised of Defendant's objections to the production requests, Plaintiff had seven weeks until discovery closed on March 7, 2014, to motion this Court to compel discovery. Plaintiff filed the instant motion on July 30, 2014. Doc. [40]. It is therefore untimely.

In assessing whether to grant an untimely motion to compel discovery a critical consideration is whether the moving party knew of the existence of the documents in question (or suspected their

6

existence) prior to the close of discovery.  *See Gucci*, 790 F. Supp. 2d at 140.  Although Plaintiff

was on notice of Defendant's objections to his requests for document production at earlier stages in

these proceedings, the record reasonably supports the inference that the instant motion was filed

only after Plaintiff had reason to believe that Defendant had failed to fully comply with its discovery

obligations.  On March 3, 2014, four days prior to the date on which discovery closed, Plaintiff was

provided with the report of Defendant's expert, David Dubois ("Dubois Report").  As discussed

*infra*, the Dubois Report indicates that Defendant's expert relied on certain evidence that was not

provided to Plaintiff in spite of his earlier demands for document production.  Plaintiff's belief that

Defendant never produced that evidence is a primary basis for this motion to compel.

Although Plaintiff received the Dubois Report just prior to the close of discovery in March

of 2014, he did not file the instant motion until July 30, 2014.  The Court notes, however, that

Plaintiff filed the same or virtually identical version of the instant motion on April 1, 2014.  *See*

Doc. [34].  Plaintiff withdrew that motion shortly thereafter, on April 4, 2014. *See* Doc. [35].  The

record does not indicate why Plaintiff withdrew that motion, although one according Plaintiff the

benefit of the doubt, might infer that Plaintiff withdrew the April 1, 2014 motion to compel and for

sanctions as a gesture of good faith prior to settlement sessions before Magistrate Judge Garfinkel

later that month and in July.  *See* Doc. [37] and [39].  Crediting, therefore, Plaintiff as having filed

the instant motion on April 1, 2014 — only several weeks after discovery closed — the records does

not support a finding of delay.

In keeping with the preferred practice in this Circuit, I decline to deny Plaintiff's motion to

compel on the basis that it was filed late, and will consider that motion on its merits.  *See*, *e.g.*,

*Pretty v. Prudential Ins. Co. of Am.*, 696 F. Supp. 2d. 170, 178 ("[T]he Court would prefer to

consider the issues presented by the Plaintiff's motion on the merits rather to deny it summarily on procedural grounds.") (citing *Imperial Chemicals Indus*., *PLC* v. *Barr Laboratories*, *Inc*., 126 F.R.D. 467, 471 (S.D.N.Y.1989) ("As a general rule, it is preferable that cases be decided on their merits, not by denying parties access to relevant evidence as a penalty for procedural irregularities.")).   In concluding to address the instant motion on its merits, I have also considered the extent to which countervailing factors weigh against reopening discovery to accommodate Plaintiff's instant demands for document production.   *See e.g.*, *Jeannite v. City of New York Dep't of Bldgs*., No. 09 cv 3464 (DAB) (KNF), 2010 WL 2542050, at *2 (S.D.N.Y. June 21, 2010) (discussed *supra*). Although Defendant opposes the instant motion, it has made no showing that it would be prejudiced *unfairly* by extending the discovery period.   For purposes of litigation strategy, Defendants might prefer that additional production of evidence not take place, but that is not what courts mean by unfair prejudice.   Nor is trial imminent such that reopening discovery would interrupt Defendant's preparation for trial.   My decision to consider the instant motion on its merits is also largely informed by my conclusions, discussed *infra*, that discovery items demanded by Plaintiff may contain evidence that is relevant to his claims.

**B.      The Merits of the Instant Motion**

Plaintiff's motion to compel seeks production of documents illustrated in Requests ## 4, 5, 8 and 9 of Plaintiff's second request for production, quoted verbatim below:

> Request #4: The electronic diary, including the electronic and paper notes made by claims personnel, contractors, and third party adjusters/adjusting firms relating to Plaintiff's claims.

> Request #5: Your written procedures (including document(s) maintained in electronic form) that pertain to the handling of seaman injury claims from 2010 to 2013, including but not limited to CV-11-60008915; Paul Lacava v. Norm Bloom & Son, LLC, and the subject

of this matter.

Request #8: All correspondence between Defendant and [its] insurer and/or insurance broker regarding [the vessel] from 2010 to 2013.

Request #9: All documents including but not limited to: the maintenance, repair, upkeep, operation, crew staffing, ship's log, catch, on the [vessel] operated by the Defendant between 2010 and 2013.[4]

*See* Doc. [40-3], Ex. 3, at 3-4, ¶¶ 4, 5, 8, and 9; *see also* Doc. [40-1] at 6, 13-14, 17.

Defendant initially objected to these production requests on grounds that Plaintiff demanded documents that were, *inter alia*, protected by the "attorney/client privilege," "created in anticipation of litigation," or "outside the scope of Federal Rule of Civil Procedure 26." Doc. [40-3], Ex. 3 at 3-4. I consider whether the documents identified in Requests ## 4, 5, 8, and 9 are subject to discovery in light those protections, before turning to Defendant's primary objection to the instant motion: that the documents in question either do no exist, have already been produced, or are in the possession of a third party.

### 1.   <u>Whether Documents Demanded are Discoverable</u>

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). For this purpose, relevance is viewed broadly in that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. *See also Sedona Corp*., *v. Open Solutions*, *Inc*., 249 F.R.D. 19, 21 (D. Conn. 2008); *Allied–Signal*, *Inc*. *v*. *Allegheny Ludlum Corp*.,

---

[4]Most, if not all, of the documents demanded in Requests ## 4, 5, 8, 9 of Plaintiff's second request for production, were also requested by Plaintiff in the schedules to the September 3, 2013 deposition notices of James Bloom and Norman Bloom. *See* Doc. [40-4], Ex. 7. Plaintiff also describes his first request for document production as seeking substantially similar material. *See* Doc. [40-1] at 4.

132 F.R.D. 134, 136 (D. Conn. 1990). Relevancy, construed liberally, creates a broad vista for discovery, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1998), such that a trial becomes "less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent," *United States v. Proctor & Gamble.*, 356 U.S. 677, 682 (1958).

Pursuant to the work-product doctrine, codified in Fed. R. Civ. P. 26(b)(3) "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" unless the party can demonstrate a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* "Three conditions must be fulfilled in order for work product protection to apply: The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *William A. Gross Const., Assoc., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 359 (S.D.N.Y. 2009) (internal quotation marks omitted). A document is prepared "in anticipation of litigation" if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (internal quotation marks omitted). Thus, "documents . . . prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation . . . do not qualify for protection." *Id.* "The party claiming work product production has the burden of establishing that it applies." *William A. Gross*, 262 F.R.D. at 360 (citing *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003)).

10

Apart from work-product protection, the attorney-client privilege may also be asserted to bar discovery of documents containing communications between a lawyer and client. *See e.g.*, *S.E.C. v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 136 (S.D.N.Y. 2004). "The broad outlines of the attorney-client privilege are clear: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." *United States v. Int'l Bhd. of Teamsters*, *Chauffeurs*, *Warehousemen & Helpers of Am.*, *AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997) (internal quotation marks omitted).  Like the work-product doctrine, "[t]he burden of establishing the existence of an attorney client privilege, in all of its elements, rests with the party asserting it." *Id.* (citing *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989).

As an initial matter, although Defendant objects to the production requests on the basis of the attorney-client privilege and work-product doctrine, Defendant offers nothing in the way of establishing the essential elements of those protections.  For example, there is no basis in Defendant's objection to the instant motion or elsewhere in the record suggesting that any category of documents contain privileged communications between Defendant and its counsel.  Nor does Defendant argue or point to evidence that documents contemplated in Plaintiff's production requests were prepared because of litigation.[5]  Accordingly, the Court concludes, without difficulty, that Defendant has not carried its burden to identify any documents sought in Plaintiff's production

---

[5]This is also no indication in the record that Defendant prepared a privilege log, as required by Local Rule 26(e), the purpose of which is to "provide[] a procedure for a party that has withheld information on the basis of privilege or protection as trial preparation material to make the claim so that the requesting party can decide whether to contest the claim and the court can resolve the dispute."  *See* Advisory Committee's Notes on Fed. R. Civ. P. 26(b)(5)(A) (2006 Amendment).

requests that are protected from discovery by the work-product doctrine or the attorney-client privilege.

The Court is also not persuaded  by Defendant's contention that Plaintiff's production requests demand documents that are unduly burdensome or outside the scope of Rule 26.  The production requests are reasonably calibrated to produce evidence that have a direct bearing on Plaintiff claims.  The documents contemplated in Request #9 for example, which relate to, *inter alia*, the maintenance, operation and staffing of the vessel, may establish that Defendant, through its captain or crew, breached a duty owed to Plaintiff or failed to furnish a seaworthy vessel fit for its intended use.  *See, e.g.*, Doc. 1, Count I, ¶ 12 ("As a direct and proximate result of the actions of the Defendants, the Plaintiff was hurt and injured in health, strength, and activity"); Count II, ¶ 20 ("The 'Grace P. Lowndes'[ ] was unseaworthy in that it did not have a competent and skilled captain"); Count IV, ¶ 27 ("Defendant's acts and omissions constitute gross negligence, in that they knew that the captain of the 'Grace P. Lowndes' [ ] was not skilled"); *see also* Doc. [26] at 6 (Slip Op.).  The same is true with respect to any correspondences between Defendant and its insurer regarding the vessel itself (such as those documents sought in Request #8) as well as any other third-party documents in Defendant's possession relating to Plaintiff's claims (see Request #4).  Defendant shall therefore produce the documents Plaintiff demands in Request ## 4, 8, and 9.

With respect to the documents Plaintiff demands in Request #5 relating to the injury of Paul Lacava, Defendant argues that "documents sought with respect to the *Lacava* matter are outside the scope of discovery in that said matter involved a different plaintiff, a different vessel and a different injury."  Doc. [41] at 5, n. 6.  While there may be differences relating to the circumstances of the injuries of Lacava and Plaintiff, discovery may nevertheless reveal that those circumstances are not

wholly dissimilar.  For example, Lacava, like Plaintiff, was also injured in an incident involving a vessel's dredging equipment.  Doc. [40-4], Ex. 9 at ¶ 6.  Without knowing anything more about Lacava's injury other than that fact, the relative similarity in the nature of each incident begs the question whether Defendant was on notice of unsafe protocols or detective conditions aboard its vessels — facts relevant to Plaintiff's claims.  *See*, *e.g*., Doc. 1, Count I, ¶ 11 (charging Defendant with "negligently . . . allowing . . . tackle used for shell fishing to be in dangerous, defective, and hazardous condition," and "[u]tilizing a work method that was unsafe on the vessel"); Count II, ¶ 20 ("[vessel] was unseaworthy in that it did not have a competent captain and equipment").  Evidence, therefore, relating to Lacava's injury, or other dredge injuries for that matter, are not foreclosed from discovery on relevancy grounds.

The Court is also not persuaded by Defendant's claim that the Lacava matter is not subject to discovery because that case was "resolved by way of a confidential settlement agreement between the parties."  Doc. [41] at 5, n. 6.  "Settlement agreements," and related documents, "are governed by Rule 26, which allows discovery thereof so long as such disclosure 'appears reasonably calculated to lead to the discovery of admissible evidence.'"  *Rates Tech. Inc. v. Cablevision Sys. Corp.*, No. 05 cv 3583 (DRH) (WDW), 2007 WL 1176732, at *2 (E.D.N.Y. Apr. 20, 2007) (quoting Fed. R. Civ. P. 26(b)(1)) (some quotation marks omitted); *see also Newman & Associates v. J.K. Harris & Co., LLC*, No. 04 cv 9264 (RJH) (MHD), 2005 WL 3610140, at *3 (S.D.N.Y. Dec. 15, 2005) (stating "courts have generally declined to recognize a privilege that would preclude discovery for the purpose of settlements or settlement negotiations" and collecting cases).  If even the terms of settlement agreements are generally subject to discovery, albeit not necessarily admissible at trial (see Rule 408 of the Federal Rules of Evidence), it follows that other papers related to the subject

13

matter of the controversy, such as the "written procedures" contemplated in Request #5, are subject to discovery as well.  Defendant shall therefore produce the evidence Plaintiff demands in Request #5, including "written procedures" and "document[s]," such as incident reports or other material concerning Lacava's injury.  Defendant shall also produce the incident reports or related documents concerning dredge equipment injuries of other employees.[6]

I turn next to Defendant's contention that it does not have in its possession many of the documents Plaintiff demands.

### 2.   <u>Documents in Defendant's Possession</u>

Plaintiff's contention that Defendant has not complied fully with its demand for document production is informed by certain evidence, including the Dubois Report, which Plaintiff claims suggests that Dubois relied on evidence that Defendant did not produce in spite of Plaintiff's production requests.  Plaintiff also argues that another document, "<u>Exhibit 2</u> [to the instant motion] discloses that a non-party, the Defendant's insurer[,] possesses documents which the Defendant has not disclosed."  Doc. [40-1] at 7.  "Exhibit 2" is a correspondence dated November 15, 2010, from Defendant's insurer, Acadia Insurance, (hereinafter, "Acadia") to Plaintiff's attorney, in which Acadia's Senior Claim Representative, Lisa Briggs, communicates to Plaintiff's counsel that Acadia will not pay the settlement amount Plaintiff demanded.  Her basis for the rejection of that offer is that Plaintiff's version of events "varies from the versions [she] received from the Captain and two of the crewmembers who were on board the vessel at the time of this incident."  Doc. [40-3], Ex. 2

---

[6] With respect to the injuries of employees other than Lacava, Plaintiff requested "incident reports," in demands for production attached to the deposition notices of James and Norman Bloom, Doc. [40-4], Ex. 7, and also requested business records anent "incidents regarding dredge injuries" when counsel conferred prior to the instant motion.  Doc. [40-2], ¶3.

at 1.  She goes on to suggest that Plaintiff's injuries were caused by his own negligence.  She states: "From the statements that the Captain and the two crew members have provided, it appears that this incident occurred as a result of [Plaintiff] forgetting to secure the line on the clean."  *Id*. at 2.  Citing those portions of the missive in the instant motion and demanding production of the witnesses statements on which Briggs relied, Plaintiff asks rhetorically: "Where did Lisa Briggs receive her information?"  Doc. [40-1] at 7.

> Defendant offers the following answer in its objection to the instant motion:
>
>> The . . . statements referenced in Exhibit 2 . . . were collected by Acadia through *its* marine investigator David Dubois of Marine Safety Consultants ("MSC").  Acadia is not a party to this action. This matter does not involve a first-party claim or coverage dispute.

Doc. [41] at 5 (emphasis added).

I emphasize the possessive pronoun in the first sentence of the foregoing to highlight Defendant's representation that Dubois is *Acadia's marine investigator.*  The implication of that representation — surmised without difficulty from Defendant's insistence that it "cannot produce documents that . . . are in the possession of a non-party to this litigation" — is that Dubois, as *Acadia's marine investigator*, is not also *Defendant's marine liability expert.*  Doc. [41] at 6.  Thus, the argument goes, any evidence that Dubois may have collected regarding Plaintiff's accident on January 9, 2010, is not discoverable because Dubois works for Acadia, a non-party.  Defendant's claim that it cannot produce that which it does not have rings throughout its Objection.

Defendant's characterization of Dubois as solely Acadia's investigator is problematic in view of the expert report he prepared for Defendant as part of this litigation.  The Dubois Report, dated March 3, 2014, is addressed to "Mr. McAleer," who the Court notes is Patrick McAleer, Esquire, Defendant's counsel.  The first sentence of the first full paragraph of the Dubois Report reads as

follows: "This will confirm that I [David Dubois] have been retained by you to serve as a Marine Liability Expert." Doc. [40-4], Ex. 10, at 1. Dubois concludes his Report with a summary of his fee schedule. He tells Attorney McAleer: "My fees for conducting onboard inspections, review of documents, preparation of report and testifying in court, if necessary, are billed at $100.00 per hour." *Id.* at 9 (some emphasis omitted). Dubois concludes his report to Attorney McAleer stating: "I trust this will satisfy your immediate needs but you won't hesitate to call if you have additional questions." *Id.*

Based on the Court's review of the Dubois Report, I am unable to agree with Defendant's representation that Dubois was employed solely as *Acadia's marine investigator* and not also, as the Dubois Report states, *Defendant's "Marine Liability Expert.*" Doc. [40-4] at 1 (emphasis added). It may be that Dubois wore two hats: Acadia's marine investigator by day and Defendant's marine liability expert by night. Perhaps Dubois worked only as Acadia's marine investigator when Briggs relied on the witnesses statements he collected as the basis for her rejection of Plaintiff's settlement demand offer in November 2010. At some point, however, the record reflects that Dubois was hired by Defendant as its expert.

It is not a stretch of the imagination to conclude that in order to create his expert report, Defendant must have given Dubois evidence on which to rely, or, directed him to gather information for that purpose. Nor is there any doubt that the Dubois Report — which concludes with Dubois's opinion that Plaintiff was at fault[7] — is central to Defendant's contention that Plaintiff's injuries were

---

[7]Dubois states: "Based on the materials I have reviewed and my personal inspection of the vessel and witnessing of the clam dredge hoisting system operation, it is my opinion that this accident was a direct result of plaintiff, John Casagrande, placing himself in harm's way by positioning his hand on a moving wire above the safety stopper plate that was installed specifically to prevent accidents of this type from happening." Doc. [40-4], Ex. 10 at 8.

caused by his contributory negligence, if not his "willful misconduct."  *See*, *e.g.*, Doc. [8], Second Affirmative Defense ("[Plaintiff's] injuries were caused or contributed to by [his] own negligence"); Fifth Affirmative Defense ("[P]laintiff's injuries were caused by the willful misconduct of [P]laintiff").  Rule 26(a) contemplates that evidence of this sort — that is, evidence a party "may use to support its claims or defenses" — is subject to disclosure.  Fed. R. Civ. P. 26 (a)(1)(A)(ii); *see also* Fed. R. Civ. P. 26(e)(1)(A) (mandating disclosing party to "supplement or correct its disclosure or response" unless "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.").  It follows that any evidence Dubois relied upon in forming the findings and conclusions of his expert report is discoverable evidence to which Plaintiff is entitled.

Toward that end, Plaintiff's contention that the Dubois based his report on certain undisclosed evidence is not without merit.  In directing that Defendant produce all evidence on which Dubois based his findings and conclusions, I emphasis in particular those portions of the Dubois Report that Plaintiff claims are especially indicative of Defendant's failure to produce discoverable evidence.  Plaintiff represents, for example, that he was not provided with the photographs Dubois took of the vessel on January 18, 2010, and November 26, 2013, which Dubois indicates he referenced in preparing his Report.  Doc. [40-4] at 2.  Photographs of the vessel are relevant to Plaintiff's claims and are subject to discovery.  Defendant is directed to produce them.

Plaintiff also represents that he was not provided with evidence supporting Dubois's conclusion that Plaintiff, in failing to take certain safety precautions while maintenancing the dredging equipment, "rush[ed] through the procedure."  Doc. [40-4] at 5.  To the extend Dubois relied on witness statements or other evidence not provided to Plaintiff in reaching that conclusion,

17

Defendant is directed to produce that evidence.

Plaintiff also claims that Defendant has not furnished evidence in support of Dubois's conclusion that the "vessel was modified from a single mast to a dual mast vessel with the same rigging as it was on the date of the accident, at least seven years prior to the accident." Doc. [40-4] at 5. Because Plaintiff specifically requested documents related to "the maintenance, repair, upkeep, [and] operation" of the vessel, Defendant should have produced that information. The Court orders that it do so now.

Likewise, Plaintiff claims that he was not provided with evidence that formed the basis for Dubois's conclusion that "[n]o similar injury had occurred previously and no similar injury has occurred since." Doc. [40-4] at 7. Nor, Plaintiff asserts, was he given evidence relating to Dubois's conclusion that the "owners [of Defendant] through word of mouth, have passed on to other deckhands" the "lessons learned from this casualty." *Id.* Defendant is directed to produce any evidence that served as the basis for those statements.

Plaintiff also represents that he was not provided with evidence supporting Dubois's findings that:

> Since 1991 the U.S. Coast Guard has had a vigorous Dockside Examination Program of which the owners of the vessels have participated. Records obtained and reviewed for this case indicate that the vessel has undergone numerous inspections by the Coast Guard and had received commercial fishing vessel safety decals attesting to their compliance with various rules and regulations promulgated by the Coast Guard for commercial fishing vessel safety.

Doc. [40-4] at 8. Accordingly, Defendant is directed to produce the evidence on which Dubois based these findings, including those "[r]ecords obtained and reviewed" relating to the U.S. Coast Guard's inspections of the vessel.

18

Finally, with respect to certain "statements [from] the Captain and . . . two crew members," which were referenced in Briggs's claim letter to Plaintiff's counsel (Exhibit 2), Defendant is directed to produce those witness statements to the extent Dubois relied upon them in forming the findings and conclusions of his expert report.  Doc. [40-30], Ex. 2 at 1.

## C.    <u>Sanctions</u>

The Court next considers Plaintiff's motion to sanction Defendant for its failure to comply with disclosure obligations.  Specifically, Plaintiff seeks a court "order that Defendant cannot offer any evidence to show that Plaintiff's actions on January 9, 2010, contributed to or caused his injuries."  Doc. [40] at 2.  Plaintiff also seeks an award of attorneys' fees and costs for "taking the depositions of Jimmy and Norman Bloom and for retaining maritime expert Alan Blume."  *Id.* Toward that end, Plaintiff claims that "belated production" of requested documents "will necessitate the revision of [Blume's] expert report," and suggests that the depositions of Jimmy and Norman Bloom were for naught because they were deposed without Plaintiff's counsel having the benefit of reviewing the evidence on which Dubois based his report.

As concluded in the preceding section, Defendant failed to disclose certain evidence pursuant to Rule 26(a) or (e) upon which its expert relied. Rule 37(c)(1) provides that if a party fails to disclose information "as required by Rule 26(a) or (e), the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  That rule, however, further provides that, "[i]n addition to or instead of this [preclusion] sanction, the court, on motion and after giving an opportunity to be heard," may impose other sanctions such as "payment of the reasonable expenses, including attorney's fees, caused by the failure" to disclose or supplement an earlier response, "inform the jury of the party's failure," or

"impose other appropriate sanctions." *Id.*  Thus, the nature of the sanction to be imposed is entrusted to the sound discretion of the trial court.  *See Ritchie Risk Linked Strategies Trading* (*Ireland*), *Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012).  In considering, what, if any, sanction is appropriate, the Court is mindful that preclusion is a "harsh remedy" that "should be imposed only in rare situations."  *Update Art*, *Inc*. *v. Modlin Publishing*, *Ltd*., 843 F.2d 67, 71 (2d Cir. 1988).  "Before [granting] the extreme sanction of preclusion," the Court "should inquire more fully into the actual difficulties which the violation causes, and must considers less drastic responses."  *Outley v. New York*, 837 F.2d 587, 591 (2d Cir. 1988); *see also Ritchie Risk*, 280 F.R.D. at 157.

Where, as here, a party has failed to disclose information under Rule 26(a) or (e), preclusion of evidence is not appropriate where "the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "Substantial justification means justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."  *Kunster v. City of New York*, 242 F.R.D. 261, 264-65 (S.D.N.Y. 2007) (internal quotations and citations omitted).  "Harmlessness means an absence of prejudice."  *Ritchie Risk*, 280 F.R.D. at 159.  The party that failed to comply with its discovery obligations bears the burden of proving that its failure was both substantially justified and harmless.  *Id*.; *see also Chart* v. *Town of Parma*, No. 10 cv 6179P (MWP), 2014 WL 4923166, at *25 (W.D.N.Y. Sept. 30, 2014).

Because Defendant insists that it produced all non-privileged, responsive documents in its possession, it offers very little toward establishing that its failure to produce certain evidence on which Dubois relied was "substantially justified" and "harmless."  Nevertheless, the Court hesitates to preclude Dubois's findings and conclusions in this disposition.  It may well be that Defendant's failure to disclose information was substantially justified.  For example, although Defendant had an

20

obligation to disclose evidence on which Dubois based his expert report, Defendant could have reasonably believed that it had produced all that evidence.  It may also be the case, as suggested in Defendant's response to the instant motion, that Defendant legitimately thought that some or all of the evidence collected by Dubois was not discoverable by virtue of the circumstances of his relationship with a non-party to these proceedings.

Furthermore, although this Ruling directs Defendant to produce the evidence Plaintiff identifies that is subject to discovery, the Court is not privy to the full extent and nature of the evidence that was not provided to Plaintiff.  It may be that much of that information is duplicative of that which Defendant has already produced, or alternatively, not particularly probative of Plaintiff's claims or Defendant's defenses.  Without knowing more, the Court is unable to conclude that Plaintiff has been prejudiced such that his expert report needs to be revised or the depositions of James and Norman Bloom need to be retaken.  The Court there declines, at this juncture, to sanction Defendant by precluding portions of the Dubois Report, or by awarding Plaintiff attorneys' fees and costs for taking the Bloom depositions and commissioning the report of his own expert.

A better course is not to revisit the question until such time as Defendant discloses the evidence at issue perforce of this Ruling.  At that time, Plaintiff will be in a better position to evaluate whether he has been prejudiced by Defendant's dilatory conduct.  He may then, if he chooses, file a renewed motion to sanction Defendant that explains how he has been prejudiced by the untimely disclosure of particular discovery items.  A motion informed in that way might lead to an informed decision of the Court.  Accordingly, Plaintiff's motion for sanctions will be denied without prejudice to his right to file a renewed motion after Defendant makes disclosure of the documents at issue.

Although the Court declines to issues a preclusion order or award attorneys' fees and costs for the Bloom depositions and Blume report, "it is generally appropriate, at a minimum, to require a party that has not complied with its discovery obligations to pay the reasonable fees and costs incurred by the moving party in seeking disclosure and/or in seeking discovery sanctions." *Ritchie Risk,* 280 F.R.D. at 157.  Defendant has failed to produce all of the evidence in support of its claims or defenses.  The Court therefore directs Defendant to pay the reasonable attorneys' fees and costs associated with the instant motion (Doc. #40).  Plaintiff must prove the amount of the fees and costs he claims by the submission of "contemporaneous records" which "specify for each attorney, the date, the hours expended, and the nature of the work done."  *New York Association for Retarded Children*, *Inc*. *v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

### III.   CONCLUSION

For the foregoing reasons, the Court disposes of all pending concerns as follows:

1.  Plaintiff's Motion to Compel and for Sanctions is GRANTED in part and DENIED in part (Doc. #40) such that his Motion to Compel is GRANTED, and his Motion for Sanctions is DENIED without prejudice to his right to renew the motion after Defendant has disclosed the discovery items at issue perforce of this Ruling.

2.   Defendant is directed to provide Plaintiff with all documents, photographs and other material identified in this Ruling, in Plaintiff's Motion to Compel and for Sanctions (Doc. #40), and in the various production requests referenced therein.

3.  Defendant is directed to pay the reasonable attorneys' fees and costs related to Plaintiff's preparation and filing of the Motion to Compel and for Sanctions (Doc.#40), in amounts to be agreed or determined by the Court.

4.  The case deadlines are revised as follows: All discovery shall be completed by **January 23, 2015**.  Dispositive motions must be filed on or before **February 23, 2015**.  The parties' joint trial memorandum is due on or before **March 25,  2015**, or within thirty (30) days after the Court rules on the last-filed dispositive motion, whichever is later.  The case shall be trial ready on or before **April 24, 2015**, or within thirty (30) days after the joint trial memorandum is filed, whichever is later.

5.  At any point in this schedule, as directed by Magistrate Judge Garfinkel, counsel may contact his chambers to schedule another settlement conference in this matter.  *See* Doc. [39].

6.  The parties are encouraged to conclude discovery absent further involvement from the Court.

It is SO ORDERED.

Dated: New Haven, Connecticut
            November 10, 2014

                                                             */s/Charles S. Haight, Jr.*
                                                             CHARLES S. HAIGHT, JR.
                                                             Senior United States District Judge

23